## Eversole v. Eversole's Administratrix.

(Decided March 17, 1916.)

### Appeal from Perry Circuit Court.

1. Divorce—Restoration of Property—Insurance Policies.—Subject to the right of reimbursement for such premiums with interest as the wife may have paid out of her own property or earnings, a divorce divests the wife of all interest in a policy of insurance procured by the husband and made payable to her.

2. Divorce—Restoration of Property—Insurance Policies—Premiums Paid by Wife—Evidence.—In a contest between a wife and her divorced husband's estate over the proceeds of a policy of insurance, evidence considered and held sufficient to show that the wife paid four premiums, for which, together with interest, she was entitled to reimbursement.

NAPIER & TURNER and JOHN C. EVERSOLE for appellant.

HOGG & JOHNSON and F. J. EVERSOLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On May 14th, 1901, The Mutual Life Insurance Company of New York issued a policy insuring the life of M. C. Eversole, in favor of his wife, for the sum of one thousand ($1,000.00) dollars. On January 18th, 1912, M. C. Eversole and his wife separated, and on the 24th day of September of the same year he obtained a divorce. On January 27th, 1912, he wrote a letter to the insurance company, asking that the beneficiary of the policy be changed. This request was not acted on. On February 27th, 1913, he brought suit in the Perry circuit court for the purpose of having the policy made payable to his estate instead of his divorced wife. While

this suit was pending M. C. Eversole died, and thereafter
the suit was revived in the name of his administratrix.
The company paid the proceeds of the policy into court.
Mahala Eversole was a party to this suit and filed an
answer setting up a claim to the proceeds of the policy.
On final hearing, judgment was rendered in favor of the
administratrix, and Mahala Eversole appeals.

Section 425 of the Civil Code provides:

"Every judgment for a divorce from the bond of
matrimony shall contain an order restoring any property
not disposed of at the commencement of the action,
which either party may have obtained, directly or indi-
rectly, from or through the other, during the marriage,
in consideration or by reason thereof; and any property
so obtained, without valuable consideration, shall be
deemed to have been obtained by reason of the marriage.
The proceedings to enforce this order may be by peti-
tion of either party, specifying the property which the
other has failed to restore; and the court may hear and
determine the same in a summary manner, after ten
days' notice to the party so failing."

In construing this provision it has frequently been
held that the judgment of divorce operates to restore
to the divorced parties the title to such property as
either may have obtained from or through the other,
during marriage, "in consideration or by reason there-
of"; and this is true whether the return of the property
is ordered by the judgment of divorce, or in a subse-
quent proceeding. If the order of restoration be, as is
often the case, merely formal, or none is made when the
divorce is granted, any question as to what property
shall be restored by either party to the other may be
settled by subsequent proceedings. Williams v. Gooch,
3 Met., 487; Smith v. Smith, 22 Rep., 225; Bennett v.
Bennett, 95 Ky., 545; Johnson v. Johnson, 96 Ky., 391.
It is also held that a policy of insurance is property
within the meaning of the code, and if the husband him-
self takes out a policy insuring his own life in favor of
his wife and the parties are thereafter divorced by a
court of competent jurisdiction, the wife is thereby di-
vested of all interest in the policy of insurance and can
not, at the death of the husband, claim the proceeds.
Nor does the fact that the wife performed valuable do-
mestic or business services, or paid the premiums on the
policy, give her the right to the proceeds of the policy.

However, if it appear that she, out of her own earnings or her own property, paid any of the premiums, she is entitled to be reimbursed to the extent of the premiums so paid, with interest thereon from the date of each payment. Sea, Admr., v. Conrad, 155 Ky., 51; Schauberger v. Morel's Admr., 168 Ky., 368.

It appears from the depositions of S. C. Coldwell and F. J. Eversole, that M. C. Eversole was shot in the spring of the year 1906, and that Mahala Eversole, who was conducting a boarding house, paid the premium then due on the policy, amounting to $30.79. James Duff, who lived with the Eversoles for seven years, says that he remembers that on several occasions, while they were residing in Hazard, Mahala gave to her husband the money to pay the premiums on the policy. He also says that on one occasion, while at their home in Montgomery county, he saw Mahala give her husband the money to pay the premium on the policy. This was money which Mahala had earned by keeping boarders. It further appears that Mahala and her husband lived in Hazard until the spring of 1906. They then moved to the country and made two crops, and from there she moved to Montgomery county. The premium, amounting to $30.79, was payable on May 14th of each year. The evidence is sufficient to show that Mahala paid one premium May 14th, 1906, and another premium after she moved to Montgomery county. The time of the last payment is not definitely fixed, but, in view of all the circumstances of the case, we conclude that this payment was made May 14th, 1909.

Duff further says he remembers that on several occasions, while Mahala and her husband were living in Hazard, she gave him the money out of her earnings to pay the premium. The meaning of the word "several" may vary according to the context or the circumstances under which it is employed. It is sometimes held to mean more than one and sometimes more than two. In view of the fact that the burden was on the wife to show the number of premiums paid by her, and in view of its definite and uncertain meaning, we conclude that the word "several," as employed by the witness, should be held to mean two and no more. Since the payments were made while the parties were residing in Hazard, we fix the time of their payment on May 14th, 1904, and May 14th, 1905. The above four sums, with six per

cent. interest thereon from the date of each payment until paid, should have been adjudged to be paid Mahala Eversole out of the proceeds of the policy.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.