[Civ. No. 567. Fourth Appellate District.—December 22, 1931.]

EVELYN L. SCOTT (Duly Qualified Executrix, etc.), Respondent, v. MAUDE REMLEY et al., Appellants.

J. A. Gardiner and G. E. Bradley for Appellants.

Head, Wellington & Jacobs for Respondent.

BARNARD, P. J.—The plaintiff is the widow of Hugh A. Scott, deceased, and the executrix of his estate. They were married in Arkansas in 1915 and removed from that state to California in 1919. On October 25, 1928, Hugh A. Scott executed a will in which he made the plaintiff his sole

legatee. On November 7, 1928, a written agreement was entered into between these parties in which it was provided that the husband would give to the wife the sum of $4,000, and that all property then owned or later acquired by either, should be the separate property of the respective parties. The $4,000 was paid to the plaintiff and was still on deposit in a bank in her name at the time of the trial. Hugh A. Scott delivered to his sisters, Mary Bailey and Maude Remley, the sum of $2,000 on January 29, 1928, and the further sum of $2,135.27 on March 15, 1930. On March 17, 1930, the said Hugh A. Scott died. His widow brought this action against the two sisters and certain nominal defendants, seeking to recover the two amounts referred to, as being the community property of herself and the deceased, and as having been given away without her consent. The court found that Scott and his wife had entered into the property settlement agreement above referred to, but that the same was subsequently annulled and abrogated; that the two amounts mentioned were, on the dates named, delivered by Scott to the defendant sisters; that at the times of said transfers the respective amounts were the community property of Scott and the plaintiff; and that the said transfers were made without consideration. Judgment in favor of the plaintiff for $4,135.27 was entered as against the defendant sisters, from which judgment this appeal is taken.

Some point is made by the appellants that the respondent could not maintain this action, in that the action was brought by her as executrix of her husband's estate and not for herself, as the surviving widow. The word "as" does not precede the word "executrix" in the caption of the complaint and the reference to the plaintiff as the executrix of the estate should be taken as descriptive only (*Burling* v. *Thompkins,* 77 Cal. 257 [19 Pac. 429]). This is particularly true here since it is fully apparent that the entire case was tried upon the theory that the respondent was suing as the surviving widow, to recover the amounts claimed to have been wrongfully given away.

The main question raised, the answer to which we think is decisive of this appeal, is as to whether the court's findings that the respective amounts delivered to the appellants were community property of Scott and his wife, are sustained by the evidence. The respondent concedes that there is no

direct evidence sustaining these findings, but insists that they are sustained by a presumption of law that the property in the possession of a husband is community property. ■ While such a presumption ordinarily exists, it is a disputable one and may be controverted by other evidence (*Estate of Jolly*, 196 Cal. 547 [238 Pac. 353]). ■ In this case, the respondent testified that at the time of their marriage her husband had between $5,000 and $6,000; that she at that time had $1500; that she turned her money over to him when they were married; that they both worked and put their money in the bank together; that they bought no property while in the east; that they came to California in 1919, bringing with them between $20,000 and $25,000 in money; and that they bought no property and made no investments in this state. Not only is there neither evidence nor presumption of law that the amount here in controversy did not come from the amount of cash which the husband had at the time of the marriage, but the presumption that the property in the possession of a husband is community property applies only to property acquired in California, or by persons domiciled here (*Estate of Frees*, 187 Cal. 150 [201 Pac. 112]). Furthermore, the evidence here clearly establishes the fact that all of the property of the deceased was acquired in Arkansas and brought to California in 1919. The authorities in relation to such a situation have been so frequently reviewed in recent decisions that it would serve no useful purpose to repeat it here. Under these authorities these funds remained the separate property of the husband (*Estate of Frees, supra; Estate of Arms*, 186 Cal. 554 [199 Pac. 1053]; *Estate of Drishaus*, 199 Cal. 369 [249 Pac. 515]; *Williams* v. *Sutphen*, 92 Cal. App. 697 [268 Pac. 946]; *McKay* v. *Lauriston*, 204 Cal. 557 [269 Pac. 519]; *Estate of Bruggemeyer*, 115 Cal. App. 525 [2 Pac. (2d) 534]; *Melvin* v. *Carl*, 118 Cal. App. 249 [4 Pac. (2d) 954]). The evidence does not support the findings in question, but on the contrary, it conclusively appears that these amounts were the separate property of the husband.

■ The respondent contends that all of the money possessed by the husband became community property in 1928 by reason of the fact that the property settlement agreement entered into between them was annulled and abrogated, and the further fact that these parties commingled their funds

and purchased property jointly. The only evidence as to these matters is that after the property settlement agreement of November 7, 1928, was entered into, respondent and her husband separated for about a week; that they then decided to return to Louisiana; that Scott laughingly told the respondent in referring to the property settlement agreement, "That is a thing of the past, there is no use of that agreement," and "The agreement is no more good if we are going back together"; that the two went to Louisiana, and bought the lease and fixtures of a hotel; that the $4,000 which had been paid to the respondent under the terms of the property settlement agreement was used in the purchase of this hotel; that after about a month the parties returned to California; that when the hotel was sold Scott gave back to the respondent the $4,000; and that this amount was still deposited in a bank in the name of the respondent at the time of the trial. It will have to be admitted that any evidence that the property settlement agreement was annulled is very slight, especially in view of the fact that the respondent retained the consideration paid. However, that matter is immaterial since, if the agreement was annulled, the only effect thereof was to return the property to its previous position as the separate property of the husband. Neither can it be maintained that the mere mingling of separate property owned by a husband and wife respectively can change its character from separate to community property, where it can still be traced, and especially where the mingled property is used to purchase property situated in another state, to which the parties had gone for the purpose of making their residence.

A number of other points are raised, which it is not necessary to consider under the view we take of the main question involved.

The judgment is reversed, with instructions to the trial court to enter a judgment in favor of the appellants.

Marks, J., and Jennings, J., concurred.