[Civ. No. 3320.   Fourth Dist.   July 26, 1944.]

MARGUERITE K. COOKE, Respondent, v. DOROTHEA DYER COOKE, as Executrix, etc., Appellant.

Bertrand L. Comparet and John A. Rowe, Jr., for Appellant.

R. M. Switzler for Respondent.

MARKS, J.—This is an appeal from a judgment awarding plaintiff $8,517.06, and interest, and defendant $665.77, and interest, out of money due from The Travelers Insurance Company in the principal sum of $10,000 on the life of Stephen B. Cooke, deceased, and authorizing the company to retain the amount borrowed from it on the policy. The action also involved another policy issued by the Atlas Life Insurance Company, but no question is raised by counsel on the disposition of the proceeds from that policy made by the judgment so we will give it no further notice.

Plaintiff has also attempted to appeal from an order denying her motion to terminate the proceedings for preparation of the record on appeal. She now admits that the order is not appealable though seeking to have it reviewed as a part of the case in chief.

Plaintiff and Stephen B. Cooke were married in Honolulu on February 18, 1926. There were three children the issue of this marriage. They came to California in October, 1927, and lived in East San Diego for a time. Stephen was an officer in the United States Navy and was killed in an airplane accident on January 4, 1941.

The couple lived together as husband and wife, with various separations caused by his service in the Navy, until some time in 1937, when they separated. In 1939, Stephen returned to his native State of Arkansas and instituted an action for divorce. Marguerite appeared and contested the action which resulted in a divorce being granted to Stephen. While the decree divided certain property of the parties no disposition was made of the policies of life insurance involved in this action.

On July 29, 1939, Stephen married Dorothea Dyer and they remained husband and wife up to the time of his death, at which time they were residing in the city of Coronado. Ste-

phen's will was admitted to probate in San Diego County and Dorothea was appointed executrix.

The Travelers Insurance Company policy was issued on October 1, 1930, naming Marguerite K. Cooke as beneficiary. The premiums were paid, but after the separation, Stephen borrowed money from the insurance company on the security of the policy.

The policy reserved to Stephen the right to change the named beneficiary. On December 11, 1937, he exercised this right and made the policy payable to his executors, administrators and assigns. The company consented to this change on December 13, 1937.

Marguerite K. Cooke testified, and the trial court found, that shortly after the issuance of the policy, Stephen made a gift of and delivered it to her with the promise between them that Marguerite should be and remain the sole beneficiary thereof; that after such absolute gift and delivery of the policy to her, and probably in 1935, Stephen obtained possession of the policy from her upon his statement and representation that he wished to place it in a safety deposit box for safekeeping for her use and benefit. Plaintiff did not regain possession of the policy.

In this action plaintiff sought judgment for the money due under the policy and also attacked the divorce decree rendered by the Arkansas court on the ground that it had no jurisdiction because neither party was then a resident of that state. The trial court found that the Arkansas court had jurisdiction to enter the divorce decree; that plaintiff was the divorced wife of Stephen B. Cooke, and that on and after July 29, 1939, and up to the time of his death, Dorothea Dyer Cooke had been his lawful wife and was thereafter his widow. The money derived from the insurance policy was divided as already indicated. The award to defendant was based on the fact that after their marriage the premiums on the policy had been paid out of the community funds of Stephen and Dorothea Dyer Cooke.

On June 11, 1940, Stephen B. Cooke brought an action in the Superior Court of San Diego County against Marguerite K. Cooke to establish the judgment of the Arkansas court as a foreign judgment, enforceable in the courts of this state. Marguerite was personally served with summons

and complaint and appeared by demurrer which was over-ruled. She failed to answer and her default was entered. A decree establishing the judgment of the Arkansas court as a foreign judgment of a sister state, in full force and effect, was rendered on July 19, 1940, and entered the following day. This judgment has long since become final. After the entry of this judgment, proceedings were had which resulted in changing the custody of one of the sons of Stephen and Marguerite to the father and reducing the monthly payments to be made for the support of the children. After that order was made by the Superior Court of San Diego County the Arkansas decree was modified accordingly.

The question of the jurisdiction of the Arkansas court to render the divorce decree, because of the nonresidence of Stephen, was not raised in the California case brought to establish the foreign judgment, nor in any of the supplemental proceedings which resulted in a modification of that decree by both courts.

Although plaintiff has not appealed from any portion of the judgment before us for review, her counsel has spent much time and effort in attacking that portion of it which upholds the divorce decree of the Arkansas court. He urges again that the decree is void because Stephen was not then a resident of the State of Arkansas. It should be sufficient to remark that the trial court, for obvious legal reasons, found against plaintiff on this issue and that such finding is conclusive here. We find no need to further extend this opinion with a detailed consideration of that question.

Defendant argues that the finding to the effect that Stephen made a gift of the policy to plaintiff, and that she thereafter was the owner of it, lacks evidentiary support. Plaintiff testified to facts supporting this finding and there were bits of evidence corroborating her. The attack on the sufficiency of this evidence is directed at her credibility as a witness chiefly as disclosed by her conduct after the purported gift was consummated. Defendant points out that she made no effort to regain possession of the policy after she had delivered it to Stephen for safekeeping, even though their relations had so deteriorated that a divorce action was pending, and that plaintiff made no public claim to ownership of the policy until after Stephen's death. This is an argument

on the weight to be given plaintiff's evidence which was properly addressed to the trier of fact. He considered the argument, weighed the evidence, believed plaintiff was telling the truth and found accordingly. ▇ The weight to be given evidence and the credibility of a witness are generally questions for decision in the trial court and not on appeal.

Defendant relies on the case of *Herbert* v. *Lankershim.* 9 Cal.2d 409 [71 P.2d 220], as supporting her argument of the insufficiency of the evidence to support the finding. A study of the two cases discloses a marked dissimilarity in the factual situations so that the Herbert case cannot be controlling here but rather the more general rule that the credibility of a witness and the weight to be given her testimony are questions to be decided in the trial court and not on appeal.

▇ Defendant next argues that, assuming a valid gift of the policy by Stephen to plaintiff, it was restored to Stephen under the divorce decree and statutes of the State of Arkansas, which statute we quote from an able opinion of the trial judge, as follows:

"In that connection my attention has been directed to an Arkansas Statute (Crawford & Moses, Code of 1921, Section 3511) which in part provides that:

" 'In every final judgment for divorce from the bonds of matrimony granted to the husband, an order shall be made that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof . . .'

"An earlier section (3508) is to the effect that:

" 'When a decree shall be entered the Court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable.' "

It is admitted by both parties that, generally speaking, a husband may make a valid gift of an insurance policy on his life to his wife, and that when the gift is consummated the wife becomes the owner of the policy.

The factual situation other than that already outlined seems to be this: The policy was obtained in 1930 after the effective date of section 161a of the Civil Code, and a considerable part of the premiums was paid from the community income so the

wife had a vested community interest in a portion of the policy which could not be taken from her without her consent. (*Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 P. 1034]; *McEwen* v. *New York Life Ins. Co.,* 42 Cal.App. 133 [183 P. 373]; *Lo Presti* v. *Manning,* 125 Cal.App. 442 [13 P.2d 1002].) It should follow that plaintiff had a vested interest in that portion of the insurance purchased by community funds and that this interest was not "obtained from or through the other during the marriage and in consideration or by reason thereof" but by purchase from community funds. Thus at least, as to the portion of the policy purchased with the earnings of the husband while the couple were residing in California, if not elsewhere, the Arkansas statute could not be effective as that interest vested under the California statute and not through any gift from Stephen.

The complaint filed by Stephen in the Arkansas court contained no allegation as to property except the allegation that Stephen's sole income was his Navy pay and the allegation "that he also keeps in force a substantial amount of insurance for the protection of the defendant and said minor children." The answer filed by Marguerite merely alleged that she had no income other than that given her by Stephen and that she had no finances with which to defend the case. Thus no issue was presented by the pleadings as to the insurance involved here. The findings and judgment are silent on the question of insurance although the court did divide certain property and provide for the custody and support of the children as well as for the support of Marguerite.

In considering the effect of the Arkansas statute on the insurance policy involved here we must bear in mind that in the instant case the trial court found that there was a valid and binding gift of the policy by Stephen to Marguerite, which finding we have concluded is supported by the evidence. This, coupled with the further fact that the Arkansas court did not award the policy or any interest in it to Stephen, compels defendant to rely on the Arkansas statute as the sole support of her claim that on the rendition of the divorce plaintiff was divested of her vested property interest in the insurance and that it was *ipso facto* restored to Stephen as his property.

The Arkansas statute was taken from the statutes of Kentucky (*Taylor* v. *Taylor,* 153 Ark. 206 [240 S.W. 6]), and the Arkansas courts have held that the interpretation placed on it

by the Kentucky courts should be followed in Arkansas. (*Morgan Utilities Inc. v. Perry County*, 183 Ark. 542 [37 S.W.2d 74].) Thus we should examine the Kentucky statute and its interpretation by the courts of that state which are much more numerous than those of Arkansas.

Kentucky has two statutes bearing on this subject. (Civ. Code, § 425; Ky. Stats., § 2121.) While not identical in language they have been held to be identical in meaning (*Sea v. Conrad*, 155 Ky. 51 [159 S.W. 622, Ann.Cas. 1915C 318, 47 L.R.A.N.S. 1074]), so it will be sufficient to quote section 425 of the Civil Code of Kentucky which provides as follows:

"Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage. The proceedings to enforce this order may be by petition of either party, specifying the property which the other has failed to restore; and the court may hear and determine the same in a summary manner, after 10 days' notice to the party so failing."

While the statutes of Arkansas and Kentucky are not identical, the important difference in them as affecting this case is found in the final sentence of the Kentucky statute which permits the summary restoration of property either in or independent of the divorce action. No such provision appears in the Arkansas statutes which have been cited to us.

Defendant maintains that the Arkansas statute is not only mandatory but self-executing. No Arkansas case is cited which supports this argument, but this seems to be the established law in Kentucky, with two exceptions. (See, *Sea v. Conrad, supra; Hanks v. Hanks*, 282 Ky. 236 [138 S.W.2d 362]; *Schauberger v. Morel's Admr.*, 168 Ky. 368 [182 S.W. 198, Ann.Cas. 1917C 265]; *Eversole v. Eversole's Admx.*, 169 Ky. 234 [183 S.W. 494]; *Hawkins v. Northern C. & C. Co.*, 145 Ky. 118 [140 S.W. 48]; *Asher v. Asher*, 252 Ky. 664 [68 S.W. 2d 32]; *Meyer v. Meyer*, 226 Ky. 278 [10 S.W.2d 844]; *Walden v. Walden*, 250 Ky. 379 [63 S.W.2d 290].)

The first exception to the foregoing rule is that when the

wife has during coverture contributed anything towards the purchase of the property she is entitled to the return of her contribution. (*Schauberger* v. *Morel's Admr., supra; Eversole* v. *Eversole's Admx., supra.*)

The second exception is set forth in the case of *Guthrie's Exr.* v. *Guthrie,* 155 Ky. 146 [159 S.W. 710]. This case arose over a controversy between the executor of the estate of James M. Guthrie, deceased, and Mary B. Guthrie, his divorced wife, as to which one was entitled to payment of $1,000 insurance under a policy taken on the life of James M. Guthrie while he and Mary B. Guthrie were husband and wife and were residents of Kentucky. Mary B. Guthrie was named as beneficiary in the policy. After the issuance of the policy the couple moved to Illinois where Mary B. Guthrie secured a divorce from James M. Guthrie. The parties returned to Kentucky after the divorce and became residents of that state, James dying there. The Kentucky courts awarded the money to Mary, the divorced wife, the Court of Appeals of Kentucky summarizing its reasons for its decision as follows:

"The appellants, however, insist that the divorce granted by the circuit court of Cook County, Ill., and which admittedly had jurisdiction of the parties, like a Kentucky divorce decree, of itself operates to bar the right of the divorced wife, and is one of the conditions that divest her of any interest in the policy of insurance; that is, the Illinois decree should have the same effect as a divorce granted in Kentucky. The difficulty is that appellant makes no allegation that there are, or were in force at the time of the divorce in Illinois, any laws of similar import to the Kentucky Statute and Code above referred to.

"Since the Illinois court had jurisdiction of the parties and the subject-matter, and the record not disclosing that it was the duty of that court under the laws of Illinois to restore any property obtained through the other during marriage, or in consideration, or by reason thereof, and in view of the further fact that James M. Guthrie never attempted to change the beneficiary named in the policy, we are constrained to hold that Mary B. Guthrie named as beneficiary is entitled to the proceeds."

The policy of insurance in the instant case was taken out while the parties were residents either of Hawaii or Califor-

nia. The policy was given to plaintiff while the couple were living in California and a portion of the premiums was paid out of community property while both parties were residents of California. Thus plaintiff had a vested interest in the policy, independent of any gift, of which she could not be divested either by the divorce decree or by operation of the statute under the Kentucky cases already cited as well as under established California law. It would also appear that under these circumstances she could not be divested of her community interest in the policy by a change of the beneficiary (*Travelers Ins. Co.* v. *Fancher,* 219 Cal. 351 [26 P.2d 482]) and should be entitled to at least a proportionate amount of the proceeds of the policy paid for with community funds. (*Modern Woodmen of America* v. *Gray,* 113 Cal.App. 729 [299 P. 754].)

Further, the application of the Arkansas statute to the facts of this case would have the effect of depriving plaintiff, without due process of law, of property vested in her by a prior valid gift (Fourteenth Amend. U. S. Const.; Cal. Const., art. I, § 13) and would deprive her of property without her consent and without compensation. (Cal. Const., art. I, § 1.) It has been repeatedly and consistently held by the California courts that the Legislature has no constitutional power to deprive a person of property by means of a legislative enactment. This principle is so firmly established that we need consider but few of those cases.

In *George* v. *Ransom,* 15 Cal. 322, the court had before it a statute which provided in effect that the rents and profits of the separate property of either spouse should be deemed common property. This was held unconstitutional, the court saying: "We think the Legislature has not the Constitutional power to say that the fruits of the property of the wife shall be taken from her, and given to the husband or his creditors."

The same principle was involved in the case of *Spreckels* v. *Spreckels,* 116 Cal. 339 [48 P. 228, 58 Am.St.Rep. 170, 36 L.R.A. 497]. Prior to the amendment of section 172 of the Civil Code (Stats. 1891, p. 425) a husband had the management and control of community property with absolute power of disposition, other than testamentary, as he had of his own estate. The amendment prohibited him from giving away community property or conveying it without consideration without the written consent of his wife.

After the effective date of the amendment, Claus Spreckels, voluntarily and without consideration and without the consent of his wife, gave Rudolph Spreckels corporate stock which, it was assumed, had been acquired prior to the effective date of the amendment. The court held that the amended statute could not deprive the husband of the right to give away community property acquired prior to its effective date because it would deprive the husband of a vested right in the property which the Legislature could not take away by statute.

The Legislature amended the first paragraph of section 164 of the Civil Code (Stats. 1923, p. 746) to read as follows:

"All other property acquired after marriage by either husband or wife, or both, including real property situated in this State, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property; . . ."

The constitutionality of the amendment was before the court in *Estate of Thornton*, 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343]. The property had been acquired by William M. Thornton and his wife while they were residents of Montana and under the laws of that state was the separate property of the husband subject to the wife's right of dower. The couple moved to and became residents of California bringing their earnings with them. William M. Thornton died and his widow petitioned for distribution of one-half of the property to her on the theory that it had been converted into community property by the provisions of the statute when it was brought into California. The Supreme Court held the provisions of the code section unconstitutional as applied to the facts of that case, saying:

"So long as we are bound by the holding that to limit the right of one spouse by increasing the right of the other in property acquired by their united labors, is the disturbance of a vested right, we entertain no doubt of the application of at least two provisions of the 14th amendment to the Constitution of the United States. If the right of a husband, a citizen of California, as to his separate property, is a vested one and may not be impaired or taken by California law, then to disturb in the same manner the same property right

of a citizen of another state, who chances to transfer his domicile to this state, bringing his property with him, is clearly to abridge the privileges and immunities of the citizen. Again, to take the property of A and transfer it to B because of his citizenship and domicile, is also to take his property without due process of law. This is true regardless of the place of acquisition or the state of his residence.

"The doctrine that a change of domicile to this state, accompanied by an importation of the personalty is an implied consent to a submission to requirements of this statute, cannot be sustained, for to do so would be to give effect to a restriction prohibited by the Constitution. (*Frost* v. *Railroad Com.,* 197 Cal. 230 [240 P. 26]; *Hartford Acc. etc. Co.* v. *Delta & Pine Land Co.,* 292 U.S. 143 [54 S.Ct. 634, 78 L. Ed. 1178, 92 A.L.R. 928], decided by Supreme Court of the United States, April 9, 1934.)"

The following cases are to the same effect: *Estate of Perkins,* 21 Cal.2d 561 [134 P.2d 231]; *Boyd* v. *Oser,* 23 Cal.2d 613 [145 P.2d 312]; *Estate of Bruggemeyer,* 115 Cal.App. 525 [2 P.2d 534]; *Melvin* v. *Carl,* 118 Cal.App. 249 [4 P.2d 954]; *Scott* v. *Remley,* 119 Cal.App. 384 [6 P.2d 536]. Thus it seems to be thoroughly settled that a legislative act of itself cannot deprive a person of vested property and that a person cannot be divested of property without due process of law.

Defendant has filed a supplemental brief in response to the constitutional questions just considered which were raised by the court during the oral argument. She argues that the division of property in a divorce action is incidental to the power to dissolve the marriage and is drawn from statutes; that where the statutes permit, separate property of the husband may be awarded the wife; that in such cases, where the separate property of one person has been awarded to the other in a divorce decree, the requirements of due process have been met. She cites many cases which support this argument.

We may assume the correctness of those decisions under the statutes of the various states where the causes of action arose but fail to understand their applicability to the case before us.

As we have pointed out there has been no judgment of any court restoring the insurance policy to Stephen B. Cooke. It was not made an issue in the pleadings in the Arkansas di-

vorce action and was not mentioned in the decree. As we have said before, the claim of defendant to the proceeds from the policy rests on the Arkansas statute and nothing else. The policy had been given to plaintiff long before the divorce and continued to be her property. She had a vested property right in it and to disturb that property right by statute alone would be a violation of the Fourteenth Amendment to the federal Constitution, and section 13 of article I of the State Constitution, as well as of section 1 of article I of the latter. This is thoroughly established by the cases already cited.

As we have decided the case on its merits and must affirm the judgment we need not lengthen the opinion by considering the question of the correctness of the order refusing to terminate the proceedings for the preparation of the record on appeal. As such an order is admittedly not appealable the attempted appeal from it must be dismissed.

The appeal from the order refusing to terminate the proceedings for the preparation of a record on appeal is dismissed.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 21, 1944. Traynor, J., and Schauer, J., voted for a hearing.