[Civ. No. 4274. Fourth Dist. June 30, 1952.]

VERNAL C. HUME, Respondent, v. SHERMAN LACEY, as Administrator, etc., Appellant.

148

James C. Henderson for Appellant.

Sweet, Ault & Warner for Respondent.

BARNARD, P. J.—The plaintiff was severely injured in a collision between an automobile in which he was riding as a passenger and another car driven by Alfred Erickson, who died shortly after the collision. The accident happened on November 11, 1948, and this action was filed on November 9, 1949. The court, sitting without a jury, found for the plaintiff and gave him judgment for $32,400. A new trial was denied and the defendant has appealed from the judgment.

It is first contended that the judgment must be reversed since it is against Sherman Lacey individually, and there is neither allegation nor proof which would support any judgment against him as an individual. It is argued that Lacey was not referred to in his representative capacity as administrator of the estate of Erickson in either the complaint, findings or judgment; that since the word "as" does not precede the word "administrator" in these instruments the reference to him as administrator is descriptive only; and that it follows that the action and judgment must be treated as one against him personally. The cases of *Ferry* v. *North Pacific Stages,* 112 Cal.App. 348 [296 P. 679]; *Potts* v. *Whitson,*

52 Cal.App.2d 199 [125 P.2d 947]; *Scott* v. *Remley*, 119 Cal. App. 384 [6 P.2d 536] are cited in support of this contention.

While it has been frequently held that the use of the word administrator, alone, is merely *descriptio personae*, it has also been held that the body of the complaint and the judgment roll may and should be examined for the purpose of determining whether the action involves a party individually, or in a representative capacity. (*Burling* v. *Thompkins*, 77 Cal. 257 [19 P. 429]; *Carr* v. *Carr*, 15 Cal.App. 480 [115 P. 261]; *Minehan* v. *Silveria*, 131 Cal.App. 317 [21 P.2d 617].) In the latter case, it was also pointed out that if any uncertainty exists the judgment must be construed with reference to the pleadings and the parties against whom judgment could have been rendered.

The complaint alleges that at a certain time and place "Alfred Erickson, now deceased, so negligently and carelessly drove and operated" his automobile as to cause this collision; that Lacey had been duly appointed and had qualified as "administrator of said estate"; and that the plaintiff had filed a verified claim against the estate which had been rejected. A copy of this claim against the estate, for loss of earnings as a result of this collision, was made a part of the complaint. The answer was filed by Sherman Lacey "as administrator of the estate of Alfred Erickson, deceased." The action was tried on that theory, and it sufficiently appears that it was one against Lacey in such representative capacity. No one was deceived, and the matter could easily have been cured by amendment had it been raised in the trial court.

It is next contended by the appellant, and conceded by the respondent, that the judgment erroneously fails to provide for the payment thereof in due course of administration, as required by section 730 of the Probate Code. This should have been done and the error may be corrected by modifying the judgment.

It is next contended that the appellant's cause of action did not survive after the death of Erickson. It is first argued that the Supreme Court erred in *Hunt* v. *Authier*, 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379], *Moffat* v. *Smith*, 33 Cal.2d 905 [206 P.2d 353], and *Cort* v. *Steen*, 36 Cal.2d 437 [224 P.2d 723], in holding that such a cause of action survives under section 574 of the Probate Code. It is then argued that if such survival previously existed the right thereto was abolished when section 574 was amended

in 1949, which amendment became effective prior to the filing of the complaint in this action. It is conceded that at the same time (1949) the Legislature adopted section 956 of the Civil Code, providing in part that an action arising out of a wrong which results in physical injury, or out of a statute imposing liability for such injury, shall not abate by reason of the death of the wrongdoer. It is argued that any cause of action arising out of a wrong resulting in physical injury was abolished by the 1949 amendment to section 574; and that there could be no survival of the action as one arising out of a statute imposing liability, under section 956, since the only such statute (§ 574) had been abolished.

This argument is sufficiently answered in *Cort* v. *Steen,* 36 Cal.2d 437 [224 P.2d 723], where it is pointed out that the effect of the 1949 amendments was to lift the survival provision from section 574 of the Probate Code and place it in section 956 of the Civil Code; that a survival provision was in effect at all times material to the action; that the law in force at the time of death would apply; and that the doctrine of statutory continuity was applicable. (See, also, *Chambers* v. *Davis,* 131 Cal.App. 500 [22 P.2d 27], and *Estate of Naegely,* 31 Cal.App.2d 470 [88 P.2d 715].) This cause of action arose when the injury occurred on November 11, 1948, some eleven months before the amendment to section 574 became effective. (*Smith* v. *Minnesota Mut. Life Ins. Co.,* 86 Cal.App.2d 581 [195 P.2d 457].) We conclude that appellant's cause of action was not abated for any of the reasons here relied on.

It is next contended that the complaint fails to state a cause of action under 574 of the Probate Code. It is argued that the waste of property referred to in that section must have occurred in the "lifetime" of the deceased; that there could be no action under that section where a person "dies at the wheel and as a result of death operates the vehicle to the left or wrong side of the street so as to collide with an oncoming vehicle," since his death would occur before the collision; and that the complaint is fatally defective because it is not alleged that the deceased was alive at the time of the collision.

The only merit in this argument is its novelty, including the original suggestion of negligent acts committed after death. The allegation that Erickson, "now deceased," negligently operated an automobile necessarily implies that he was alive while he was thus operating the car, and that he has

since died. It was not necessary for the complaint to anticipate or negative any such defense (*Fay* v. *Cox,* 45 Cal. App. 696 [188 P. 623]). It appears, without conflict, that Erickson was unconscious immediately after the accident, and that he did not die until after he reached the hospital. There is nothing to indicate that the appellant was misled in this regard. (*Grossetti* v. *Sweasey,* 176 Cal. 793 [169 P. 687].)

 Appellant's final contention is that the court erred in ruling that the damages, loss of earning capacity, should not be reduced by the amounts to be received from a pension. The appellant testified that he was a sergeant in the Marine Corps, his pay being $317.50 per month; that he received this pay until March 31, 1951, when he was retired on pension because of physical disability resulting from this accident; and that under such pension he will receive $220.50 per month. There was evidence that he was 56 years old, and that he would have had to retire on pension at 65. An objection was made to this line of testimony and the court admitted it subject to his ruling thereon at the end of the case. At that time the court held that the pension should be disregarded in fixing the amount of damages, and awarded judgment for $32,400, stating that the appellant would have been permitted to serve in the Marine Corps for another nine years, during which his pay for active duty would have been approximately $3,600 a year.

It is argued that the amount recoverable under section 574 is the damage suffered by "the lessening of their estate" (*Hunt* v. *Authier, supra*); that if the appellant had not been injured he would have received $317.50 per month for the next nine years, at which time he would retire; that because of this injury he will receive $220.50 per month pension; and that his estate has actually been lessened only in the amount of $97 per month for the nine-year period. It is further argued that if he had not been injured he would have received a total of $34,200 during the nine years; that under the judgment he will receive $32,400 plus $23,814 pension, or a total of $56,214; and that while his estate has thus been lessened by $10,476 ($97 per month for nine years) the judgment gives him an additional $21,924.

This argument is somewhat plausible from a factual standpoint. While this accident deprived the appellant of his earning capacity, he does not actually lose the full amount as he will get $220.50 per month, which he would otherwise

not have received. Under section 574 he may recover only for property damage, which in this case means his earning capacity. If the judgment stands, he will actually receive more than he would have received had he not been injured.

However, another rule of law seems to prevent any reduction of the damages recoverable by offsetting the amount of the pension payments which would be received during the same period. In the respect here in question a similar situation was presented in *Bencich* v. *Market St. Ry. Co.*, 29 Cal. App.2d 641 [85 P.2d 556]. In that case, a city fireman had been retired on pension for a disability resulting from the accident involved. The court held that evidence of the pension payments had been properly excluded and stated that "... the better view appears to be that such evidence is inadmissible for the purpose of reducing the amount of damages recoverable by the injured person on account of loss of earning capacity." A hearing in the Supreme Court was denied. In *Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198], the court said:

"Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer. (Cases.) The rule has been applied where the independent source is pension systems or charity."

While the cases just cited were general actions for damages, we can see no difference in principle, in this regard, between such an action and one brought under section 574. They both involve the same form of property, the right to support from future earnings, and in each the pension is received during a period when it would not otherwise be payable. So far as earning capacity is concerned, the issue is the same in both classes of cases and if pension payments are excluded from consideration in the one, no good reason appears why they should not be excluded in the other. It may be observed that there is a valid reason for not giving the wrongdoer any benefit from pension rights, with which he had nothing to do. They were previously acquired by the injured party, were paid for by him in some manner, and the fact that he had other property in the nature of a pension right may logically be held immaterial.

The judgment is modified by adding the words "payable in due course of administration" to be inserted after the figure $32,400. As so modified, the judgment is affirmed. The respondent to recover costs.

Griffin, J., and Mussell, J., concurred.