Gibson, J.,
dissenting. Section 5731.02, Revised Code, levies a tax upon the succession to- any property passing to or for the use of a person, institution, or corporation in seven specified cases. Without question, at least one-half of the 28,700 shares of stock acquired by the decedent while he and his wife were domiciled in California belonged to decedent and thus is subject to the Ohio succession tax. The sole question before this court then is whether the Ohio succession tax should have been assessed against the remaining one-half of the 28,700 *145 shares. The answer to this question requires an evaluation of the nature of the interest, if any, which Mrs. Kessler may have in the remaining one-half of the shares.
Mrs. Kessler’s interest, if any, in the 28,700 shares of stock acquired by her husband while they were domiciled in California is to be determined by California law. Restatement, Conflict of Laws, Section 290; 15 American Jurisprudence (2d), 831, Community Property, Section 13. Since 1872, the California Civil Code has provided that a husband and wife may hold property as joint tenants, tenants in common, or as community property. Section 161, California Civil Code. Separate property of the wife is defined by Section 162, and separate property of the husband is defined by Section 163. Unless acquired as separate property, all other property acquired by husband or wife, during marriage and while domiciled in California, is community property. Sections 164 and 687, California Civil Code. There is no question that the 28,700 shares of stock were acquired as community property.
The litigants disagree only as to the nature of Mrs. Kessler’s interest in this community property. On the one hand, the Tax Commissioner contends that even in California the wife had only a mere expectancy in the community property until the termination of the marriage relation in California by divorce or death. On the other hand, the appellees contend that Mrs. Kessler acquired a vested ownership interest in one-half of the community property while domiciled in California, and that this identifiable one-half interest continues to be hers, even though she and the decedent were domiciled in Ohio at the time of his death.
Section 161a, California Civil Code, enacted in 1927, provides as follows: “The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in Sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of the husband and wife in community property.” The plain meaning of this provision is that the wife’s ownership interest is equal to the husband’s. If he has a vested interest, as he ob *146 viously does, then she also has a vested interest, otherwise the word, “equal,” means nothing. If she has no vested interest then he can have none, which would be absurd. The words, “present” and “existing,” reinforce the conclusion that both husband and wife have equal vested interests in community property in California. The California courts have defined the wife’s ownership interest in community property as a vested interest during the continuance of the marriage relation. See Harris, Exr., v. Harris (1962), 57 Cal. (2d) 367, 369 P. (2d), 481; Berry v. Berry (1956), 140 Cal. App. (2d), 50, 294 P. (2d), 757; Horton v. Horton (1953), 115 Cal. App. (2d), 360, 252 P. (2d), 397; Louie v. Hagstrom’s Food Stores, Inc. (1947), 81 Cal. App. (2d), 601, 184 P. (2d), 708; Cooke v. Cooke, Exrx. (1944), 65 Cal. App. (2d), 260, 150 P. (2d), 514; Sidebotham v. Robison, Admr. (C. C. A., 9, 1954), 216 F. (2d), 816; Brooks v. United States (S. D. Cal., 1949), 84 F. Supp., 623.
Although it is easy to confuse management rights with ownership rights, it is clear that the management rights conferred upon the husband by Section 172, California Civil Code, do not detract from the wife’s vested ownership rights in community property acquired during the marriage relation. To say that the husband’s powers of management and control over the wife’s equal interest in the community property are property rights owned by the husband would be to deny that the wife has the equal interest in the community property which Section 161a confers. In fact, it is well settled in California that the husband, in exercising his right of management, acts as a fiduciary with respect to the one-half interest in the community property owned by the wife. Vai v. Bank of America National Trust & Savings Assn. (1961), 56 Cal. (2d), 329, 364 P. (2d), 247; Jorgensen v. Jorgensen (1948), 32 Cal. (2d), 13, 193 P. (2d), 738; Fields v. Michael, Exrx. (1949), 91 Cal. App. (2d), 443, 205 P. (2d), 402; Poe, Collr., v. Seaborn (1930), 282 U. S., 101, 110; 41 Corpus Juris Secundum, 1070, Husband and Wife, Section 502c; Defuniak, Commonwealth v. Terjen: Common Law Mutilates Community Property, 43 Va. L. Rev., 49 (1957).
When the Kesslers returned to Ohio in 1957, Kessler no longer was authorized by community property law to exercise *147 management rights over Mrs. Kessler’s interest in the shares of stock, and Ohio law does not provide for snch management and control. But as a practical matter, since the shares of stock stood in his name, it may be assumed that he continued to manage and control the stock with Mrs. Kessler’s assent or acquiescence.
Property interests in personalty acquired in one state continue after the personalty is moved to another state. This basic rule is set forth in Section 291 of the Eestatement, Conflict of Laws, as follows: “Interests in movables acquired by either or both of the spouses in one state continue after the movables have been brought into another state until the interests are affected by some new dealings with the movables in the second state.” The specific application of the rule to community property is stated in Section 292 thus: “Movables held by spouses in community continue to be held in community when taken into a state which does not create community interests. ’ ’ See Eestatement (Second), Conflict of Laws (Tentative Draft No. 5, April 24, 1959), Section 292; 15 American Jurisprudence (2d), 834, Community Property, Section 17.
The Tax Commissioner contends that under Section 140.5, California Civil Code, and Section 201.5, California Probate Code, if the shares of stock had been acquired in Ohio solely in the decedent’s name and moved to California, they would have acquired quasi-community property status if the decedent and Mrs. Kessler had been domiciled in California at the time of his death. These statutes, however, are concerned with the rearrangement of property rights in the event of divorce or death. Every state imposes statutory controls over property in the event of divorce or death, including Ohio. See Section 3105.18, Eevised Code (distribution of property as alimony); Section 2105.06, Revised Code (statute of descent and distribution); Section 2107.39, Revised Code (authority for election to take by descent and distribution rather than under will). The commissioner also overlooks In re Estate of Thornton (1934), 1 Cal. (2d), 1, 33 P. (2d), 1, 92 A. L. R., 1343; Estate of Krey (1960), 183 Cal. App. (2d), 312, 6 Cal. Rep., 804; 15 American Jurisprudence (2d), 833, Community Property, Section 16; and 10 California Jurisprudence (2d), 668, Community Property, Section 6. The proper rule is summarized in Eestatement, Con *148 flict of Laws, Section 293, as follows: “Interests in movables held separately by either spouse remain separate interests although the movables are taken into a state which creates community interests therein.”
Since Mrs. Kessler had acquired a vested ownership interest equal to that of the decedent in the 28,700 shares of stock acquired as community property in California, the only conceivable property that could have passed to her upon the death of her husband was the right to full control and management of the stock, which we have assumed the decedent continued to exercise after they returned to Ohio. In applying federal death taxes to community property interests, the Supreme Court of the United States in Fernandez, Collr., v. Wiener (1945), 326 U. S., 340, 355, 90 L. Ed., 116, aptly observed: “ * * * As we have seen, the death of the husband of the Louisiana marital community not only operates to transfer his rights in his share of the community property to his heirs or those taking under his will. It terminates his expansive and sometimes profitable control over the wife’s share, and for the first time brings her half of the property into her full and exclusive possession, control and enjoyment. The cessation of these extensive powers of the husband, even though they were powers over property which he never ‘owned’, and the establishment in the wife of new powers of control over her share, though it was always hers, furnish appropriate occasions for the imposition of an excise tax.” (Emphasis added.)
Although the General Assembly apparently could lawfully impose a tax upon the cessation of an exercise of powers of management and control of a vested community property interest, even if we assume there was such a cessation at the death of the decedent in the instant case, the General Assembly has not done so.
In my opinion, one-half interest in the 28,700 shares of stock acquired by Mr. Kessler while the Kesslers were domiciled in California belonged to Mrs. Kessler at the time of the death of her husband in Ohio, and thus were not subject to the Ohio succession tax.
Taft, C. J., and Herbert, J., concur in the foregoing dissenting opinion.