ESTATE OF GLADYS F. BOTHUN, DECEASED, REBECCA-JANE HILDERBRAND, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bothun v. Commissioner
Docket No. 7968-72.
United States Tax Court
T.C. Memo 1976-230; 1976 Tax Ct. Memo LEXIS 173; 35 T.C.M. (CCH) 1008; T.C.M. (RIA) 760230; July 22, 1976, Filed Wareham Seaman, Jr., for the petitioner. James H. Ross, Jr., for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency in Federal estate tax due from the estate of Gladys F. Bothun in the amount of $2,457.58. The sole issue for decision is whether there was a lifetime transfer by the decedent of her interest in a life insurance policy on the life of *174 her husband, so as to require inclusion of the proceeds in decedent's gross estate under one or all of sections 2036, 2037 or 2038. [1]
The case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. All of the facts have been stipulated by the parties. We adopt the stipulation of facts and the exhibits attached thereto as our findings. The pertinent facts are summarized below. The petitioner is the estate of Gladys F. Bothun, deceased, Rebecca-Jane Hilderbrand, executrix. The residence of the executrix at the time the petition was filed was San Luis Obispo, California. Gladys F. Bothun resided in Sacramento, California at the time of her death on August 29, 1969. The Federal estate tax return for the estate of Gladys F. Bothun was filed with the District Director of Internal Revenue for the Northern District of California on or about October 2, 1970. Gladys F. Bothun and her husband, Hardy L. Bothun both died on August 29, 1969, from injuries sustained in an automobile accident which occurred in Nevada County, California. Hardy Bothun *175 died instantly, while Gladys was taken to a hospital in Reno, Nevada, where she died about one hour and 20 minutes subsequent to Hardy's death. Gladys and her husband were domiciliaries of California and all property of the decedent and her husband prior to Hardy's death was community property. On or about May 25, 1959, Hardy Bothun applied for a term life insurance policy in the face amount of $10,000, after which Occidental Insurance Company of California issued its Policy Number 404305-408, effective June 1, 1959. The policy contained a double indemnity provision for accidental death. Hardy Bothun was the insured and the decedent, Gladys Bothun, was designated as beneficiary. The policy included the following provision: BENEFICIARY. The amount of Term Life Insurance payable under this policy shall be paid to the beneficiary designated by the Insured, if such beneficiary survives the Insured. The interest of any beneficiary who dies simultaneously with the Insured or died within 15 days after the death of the Insured and before payment of any of the proceeds to that beneficiary shall also terminate. The proceeds will then be paid as though such beneficiary had died before *176 the Insured. If the interest of all designated beneficiaries has terminated, or if no beneficiary has been designated by the Insured, the Amount of Life Insurance shall be paid to the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured: The Insured's (a) spouse; (b) children, including legally adopted children; (c) parents; (d) brothers and sisters; (e) executor or administrator. The proceeds of the policy in the amount of $20,000 were paid to Rebecca-Jane Hilderbrand as the only child of Hardy L. Bothun, pursuant to the terms of the beneficiary clause. The Federal estate tax return filed on behalf of the estate of Hardy Bothun on or about October 2, 1970, included as an asset of Hardy's gross estate one-half the proceeds of the policy. No part of the proceeds of the policy was included in the Federal estate tax return filed on behalf of the estate of Gladys F. Bothun. On October 19, 1972, subsequent to the filing of the petition in this case, the executrix of Hardy Bothun's estate filed a claim for refund based on an erroneously included asset in Hardy's estate. The claim, in the *177 amount of $1,517.83, was allowed in full. The petitioner deducted the amount of Federal estate tax due in Hardy's estate as a debt of Glady's estate and claimed a credit for the Federal estate taxes paid by Hardy's estate on property passing to the petitioner. Because of the allowance of such claim in Hardy's estate, the deduction claimed for Federal estate taxes due should be reduced to $2,012.41 and the credit for tax on prior transfers should be reduced to $1,987.09. We must determine whether there was a lifetime transfer by the decedent of her interest in the insurance policy on the life of her husband. The parties have stipulated that if the Court finds a lifetime transfer by the decedent, one-half of the proceeds of the policy is includable in decedent's gross estate. Petitioner contends that, in order for respondent to prevail, the transfer must have occurred during Gladys' lifetime. The transfer, according to petitioner, did not occur during her lifetime. Up to the moment of her death Gladys retained her full interest in the policy. Until that time she remained the beneficiary of the policy. It was her death which terminated her interest in the policy, and thus there *178 was no lifetime transfer of her interest in the insurance. Respondent argues that at the time of Hardy Bothun's death there was an inter vivos transfer of decedent's community property interest in the insurance policy on her husband's life. At Hardy's death there was a shift in control and a shift in beneficial interest from the community, of which decedent was an equal member, to the beneficiary. Respondent contends that Hardy Bothun effected only half of the transfer, and that the decedent effected the other half. Sections 2036, 2037, and 2038 provide for the inclusion in a decedent's gross estate of property which was transferred by the decedent prior to his death, but with respect to which he retained certain beneficial interest or control. All three sections require as a condition to their application the finding of an inter vivos transfer by the decedent. The parties have stipulated that if the decedent made an inter vivos transfer of the right to the proceeds of the insurance policy on her husband's life, then the value of the transferred interest is includable in her gross estate under one or all of these three transfer sections. Thus, the only question we must decide *179 is whether or not there was an inter vivos transfer of the decedent's interest in the insurance policy. Our determination is complicated by the fact that life insurance is generally considered suigeneris so far as community property law is concerned. [2]
Insurance is a distinct type of property. As property, it is capable of being owned by an individual or a group of individuals. The rights which an individual may exercise with respect to insurance are referred to as either policy-rights or proceeds-rights. Policy-rights include the entire bundle of incidents of ownership in a policy. "This bundle includes all 'the economic benefits of the insurance, the cash surrender value, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign the policy or revoke an assignment, the power to pledge the policy for a loan, the power to obtain from the insurer a loan against the surrender value of the policy.'" [3] All of these rights are property rights which inure to the owner or owners of the policy. *180 Proceeds-rights are entirely different. Proceeds-rights are contractual rights created in favor of a beneficiary by the individual who takes out the policy. If the right to change the beneficiary is reserved, the beneficiary's proceeds-rights are inchoate until the death of the insured, at which point the rights of the beneficiary vest pursuant to the terms of the policy. Rights in an insurance policy are even harder to determine in community property states. Community property is a system under which all property acquired during marriage is regarded as the common possession, or product of the reciprocal labor, of the husband and wife. Presently, eight states operate under the community property system. [4]
In California, the respective interests of the marital partners in the community property are "present, existing and equal interests under the management and control of the husband." [5] Each spouse has a vested property right to the extent of one-half of the community property. [6] The interest of each spouse is included in his or her gross estate at death. *181 The life insurance policy on Hardy's life was the community property of Hardy and Gladys while they were alive. The premiums on the policy were paid with community funds, and thus the policy itself became a part of the "community." Hardy and Gladys, as equal members of the community, had certain rights with respect to the policy. Under California law, Gladys had a vested one-half undivided interest in the policy. The sequence of events which eventually resulted in the payment of the proceeds to decedent's daughter is critical, since the imposition of tax upon decedent's estate is based upon the alleged inter vivos transfer of Gladys' rights in that policy. Under the terms of the insurance contract Hardy Bothun was the insured, and the decedent, Gladys Bothun, was designated as beneficiary. The policy provided for the possible simultaneous death or near simultaneous death of the named beneficiary under the terms of the insurance contract previously set *182 forth. The proceeds of the life insurance policy were paid to Rebecca-Jane Hilderbrand, the only child of Hardy L. Bothun since the decedent failed to survive her husband by 15 days. The decedent received none of the proceeds of the policy, even though she was the named beneficiary. It is clear that at some point in time there was a transfer away from Gladys of her rights under the policy. We must determine the exact point in time at which that transfer took place. The transfer process was accurately described by the Court of Appeals in Commissioner v. Chase Manhattan Bank,259 F. 2d 231, 255 (5th Cir. 1958), revg. 25 T.C. 617 (1955), [7] as follows: In a community property state where insurance on the husband's life is purchased with community funds, payable revocably to a third person beneficiary, the husband's right to change the beneficiary and all other control over the property are held as agent of the community. The bundle of rights in the policy is owned by the community. Something happens to this bundle when the insured dies, thereby terminating his control over the property and bringing the community to an end. What happens is, *183 that the community's property interests in the policy-rights are transformed into the beneficiary's right to the proceeds. It is a shift in control and a shift of beneficial interest. This is the transfer that is taxed. [Emphasis added.] In the instant case we think the transfer took place exactly as described in Commissioner v. Chase ManhattanBank,supra. During their marriage both Hardy and Gladys held present, vested one-half interests in the insurance policy on Hardy's life. Upon the death of Hardy, however, the community ceased to exist, and the policy matured, i.e., the beneficiary's rights vested. At Hardy's death the policy, which had earlier been the community property of Hardy and Gladys, was transformed into the proceeds-rights of the beneficiary. Since the transformation took place at the moment of Hardy's death, at a time when Gladys was still alive, there was an inter vivos transfer. Hardy effected only half of the transfer; Gladys effected *184 the other half. For this reason her estate is taxable on one-half of the proceeds of the policy. Petitioner contends that since the ultimate beneficiary was not known at the time of Hardy's death, the transfer did not occur until Gladys' death, and thus there could not have been an inter vivos transfer of her interest in the policy. We do not agree. The confusion here involves the distinction between policy-rights and proceeds-rights. If Gladys had survived Hardy by 15 days, she would have been entitled to the proceeds of the policy. Granted, it is not until after she dies that we are able to determine the ultimate recipient of the proceeds. However, the transfer which we are taxing here is not the actual, physical transfer of proceeds, but rather the transfer of an interest in a life insurance policy. Up until Hardy's death, Gladys had a vested interest in the policy itself. His death, however, operated to effect a termination of Gladys' existing policy rights, and create certain contractual rights in favor of a beneficiary. This is the transfer that is taxed. In Chase National Bank v. United States,278 U.S. 327 (1929), the decedent had procured *185 several policies on his life, payable to others but reserving to himself the right to change beneficiaries. The Supreme Court was concerned with the constitutionality of a tax on "the transfer of the net estate of every decedent," imposed by the Revenue Act of 1921. It said (278 U.S. 327 at 334, 335, 338): [Until] the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. * * * A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, * * * is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death. * * *
Termination of the power of control *186 at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, * * * [Emphasis added.] We think the logic of the Chase National Bank case is applicable to a community property situation involving life insurance under the Internal Revenue Code. Hardy's death operated to effect a transfer of both his and Gladys' interests in the policy. The transfer was an inter vivos transfer because it took place at Hardy's death, at a time when Gladys was still alive. Accordingly, we hold that the decedent's community interest in the proceeds of the insurance policy is includable in her gross estate under one or all of sections 2036, 2037, and 2038 of the Code. To reflect the concessions made by the parties and the conclusions reached herein. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. See generally S. Scoville, Community Property Rights in Life Insurance (1969).↩
3. Commissioner v. Chase Manhattan Bank,259 F. 2d 231, 245-246, citing Benjamin and Pigman, Federal Estate and Gift Taxation of Louisiana Life Insurance, 28 Tul. L. Rev. 243, 247↩ (1954).
4. Those eight states are California, Idaho, Arizona, Nevada, Louisiana, Washington, New Mexico, and Texas.↩
5. Cal. Civ. Code § 5105↩ (West 1970). 6. Cooke v. Cooke,65 Cal. App. 2d 260, 150 P. 2d 514 (1944), Estate of Kelly,122 Cal. App. 2d 42, 264 P. 2d 210↩ (1953).
7. It is not necessary for us to consider here our prior opinion in the Chase Manhattan Bank↩ case in view of the manner in which the parties have stipulated the narrow issue to be decided.