## Duvall v. Duvall.

(Decided March 8, 1912.)

### Appeal from Hardin Circuit Court.

1. Divorce and Alimony—Divorce of Wife—Allowance to Wife and Her Attorney.—In a suit by a wife against her husband for a divorce and alimony where she had no estate of her own, and he owned property of $4,500.00, after paying his debts, and being a strong man and able to work, the court did not err in allowing her $1,660 alimony and $250 as her attorneys fee and also directed a return of $500 to her which he had obtained by reason of the marriage.

2. Same—Custody of the Children—Right of Visitation by Each Parent.—The custody of the children and proper provisions whereby both parents may have something of their society and affection are within the control of the court and appropriate orders may be made from time to time changing the custody and

care of the children and the right of visitation as changing conditions, which, from time to time may be brought to the attention of the chancellor.

BENNETT H. YOUNG, MARION W. RIPY and H. L. JAMES for appellant.

G. K. HOLBERT for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The appellee, Mrs. Sudie E. Duvall, brought this action against her husband, the appellant, Thomas J. Duvall, for divorce and the general relief incident to divorce proceedings. The judgment of the trial court divorced the parties; and this, of course, is not subject to review. The judgment further found in favor of Mrs. Duvall $1,660.00 upon her claim for alimony. It likewise directed the return to her of $500.00, which her husband had obtained from her by reason of the marriage. It further directed that the husband pay the costs of the action, including an attorney's fee of $250.00 to Mrs. Duvall's attorney. It awarded Mrs. Duvall the custody of the two sons, the only living children of the union, and directed the payment of $15.00 a month by their father for their support. Appellant complains by this appeal of each and all of these reviewable findings.

The appellant was a Baptist minister and as such had charge of a church in Cape Girardeau, Missouri. A young white woman was at work in his home as a domestic. He went into her room at night and made improper advances to her. This resulted in an open scandal there, followed by his resignation of his pastorate and his return to Kentucky with Mrs. Duvall. He agreed with the officers of the Missouri church that if the matter was quieted he would leave the ministry. He did not keep this agreement and later took charge of a church in Louisville, Kentucky.

He and his wife were accustomed to visit her father, Mr. S. H. Bland, of Hardin county. After their return to Louisville and upon the occasion of one of these visits he accused Mrs. Duvall of having gone into a cornfield upon her father's place for the purpose of meeting a man. He insisted upon taking her slipper, and in conjunction with her father did take her slipper, down to the cornfield to measure it in a woman's tracks which he had seen there, near the tracks of a man. The evi-

dence is clear that his charge was entirely without foundation. The woman's tracks which were there were those of a larger foot than those of his wife, and were made by a negro girl who passed through the field, and who testified that she had gone through the field. He likewise accused his wife, at least in tales to others, that he had caught her in the arms of a Mr. Ditto; but this charge as well was refuted by clear testimony. The fidelity, devotion and patience of Mrs. Duvall are clearly established by the testimony. When the charge was made about the meeting in the cornfield, she determined to no longer live with Duvall, and asked her father if she might have a home at his home. He told her that she could have a home there as long as she lived. She remained there and brought this action.

First, upon the question of alimony. Mr. Duvall was a strong able-bodied man of thrifty habits. He had bought and owned a farm, which, at the lowest reasonable figure named in the record, was worth $8,000.00. He owed debts, which, at the highest figures named in the record, amounted to about $3,500.00, leaving him an estate of at least $4,500.00. Some of the witnesses placed the value of the farm as in excess of $9,000.00. The amount awarded the wife as alimony may, in round figures, be said not to exceed one-third of the husband's estate. As she had no estate of her own, under the provision of Section 2122, Kentucky Statutes, she was entitled to such allowance out of her husband's estate as might be deemed equitable. In the case of Beall vs. Beall, 80 Ky., 675, the court remarked, in discussing certain former cases from this court upon the subject of alimony, that "these cases indicate that the chancellor, by reason of the brutal treatment of the wife in the one case, would inflict a sort of punishment on the husband by taking from him more of his estate than he would in a case where there is some palliation for the wrong." The opinion further adds that the facts of each particular case will control the chancellor in determining the amount of the allowance to be made. We find in this record no circumstances of palliation. The amount allowed by the chancellor was not so great, in our judgment, as to indicate that he was moved by any purpose to inflict a punishment upon Duvall. It suffices to say that, in our judgment, under the facts proven in this

case, the amount allowed was rather less than more than an equitable allowance.

Upon the judgment of restoration of the $500.00. Section 425, Civil Code, provides that every judgment for a divorce shall contain an order restoring any property which either party may have obtained directly or indirectly from the other during marriage, in consideration or by reason thereof; and that any property so obtained, without valuable consideration, should be deemed to have been obtained by reason of the marriage. It was proper in this action to set up and ask the restoration of this sum. It was no misjoinder; for the Code itself says that the judgment of divorce should contain such an order. The existence and justice of the $500.00 claim are admitted in a letter written by Duvall to his wife after the separation. In it he recalls to her his promise that he would pay the note. He states that the note is valid; that he had always intended that she should have the money; and that she knew he would not try to withstand it.

Nor, in our opinion, was the allowance of $250.00 as an attorney's fee improper or too large. Under repeated decisions of this court it is a proper part of the costs allowable to the wife in cases where the facts are as here.

The children born of the union and alive at the time of the preparation of this case were two, both boys, then respectively thirteen and ten years of age. The court's judgment left them in the care of the mother, with a provision for their seeing their father. The custody of the children, and proper provisions whereby both parents may have something of their society and affection are within the control of the court; and appropriate orders may be made from time to time changing the custody and care of the children and the right of visitation, as changing conditions, which, from time to time, may be brought to the attention of the chancellor, may justify. The order made giving these children to the custody of the mother was not error. The older boy, who was put upon the stand about other matters, when taken for cross-examination by his father's attorney, spontaneously gave expression to his desire to continue to live with his mother. The father's character and moral course, as disclosed by the record, are at least open to question; while the mother's are not. An effort was made by the introduction of some negro servants who

had lived upon the farm of Mr. Bland, the father of Mrs. Duvall, to attack his moral character. These witnesses are impeached by other witnesses, at least two of whom were closely related to Mr. Duvall. Likewise, an effort was made to assault the standing of Mr. Bland, recalling some neighborhood matters occurring more than forty years ago; but these efforts are but flimsy shadows. It seems that a bachelor brother of Mrs. Duvall, who lives in the same home, is sometimes given to dissipation; but the mother's protection and guidance is a shield for her sons against this particular form of immorality. They might not have the benefit of a like protection in other surroundings from other forms of immorality. This court has taken the position that it will regard as the primary guide the welfare of the child in fixing its domicile and custody, when through such unhappy conditions as obtain in this case the court, instead of the mutual and accordant instinct of the parents, must direct, as best it can, the nurture and education of the child by looking after its environment. The course of the chancellor below meets our approval.

For the reasons given the judgment of the trial court is affirmed.