Elsie W. KIVETT, Appellant,

v.

Charles KIVETT, Appellee.

Court of Appeals of Kentucky.

March 21, 1958.

Rehearing Denied May 29, 1958.

R. W. Keenon, C. Gibson Downing, Jr., Stoll, Keenon & Park, Lexington, for appellant.

Daniel Boone Smith, Smith & Shehan, Harlan, for appellee.

MONTGOMERY, Judge.

Elsie W. Kivett, by appeal, challenges the correctness of the Chancellor's determination of the property to be restored to her and failure to award permanent alimony. The divorce was granted to the husband. Pending the appeal, Elsie W. Kivett filed a motion in the Bell Circuit Court to set aside the parts of the judgment relating to alimony and property restoration because of newly discovered evidence. CR 60.02. The right to proceed in this manner has been upheld. Wolfe v. Combs' Adm'r, Ky., 273 S.W.2d 33. This motion was overruled. Her appeal from that ruling has been consolidated with the original appeal.

The parties were married March 2, 1940. Until 1949, they lived in various places in Kentucky and Tennessee. During that period, appellee served forty-four months in the Navy and attended law school. In January 1949, appellee purchased a one-half interest in Cumberland Ford Motors, Inc., in Pineville. They lived there until they separated. In 1952, appellee and his associates in the Pineville business purchased the Harlan Motor Company, Harlan, Kentucky.

Appellant had been gainfully employed approximately all of her married life except for the three years prior to their separation. Part of the time she was the bookkeeper for the Pineville business. The parties are now in their middle forties. They had no children.

In August 1955, appellee attended an auto dealers' meeting at Kentucky Lake. Appellant accompanied him to visit her people in Murray. Appellee left her in Murray and did not return.

Appellee sued for divorce on October 16, 1955, on the ground of cruel and inhuman treatment. Appellant filed a counterclaim in which she sought a divorce on the same ground, as well as alimony and restoration of property. On the original appeal, appellant contends that she is entitled to alimony because the divorce was erroneously granted to appellee and that error was committed in the determination of the property restored to her. On the appeal from the order overruling her motion under CR 60.02, she insists that the newly discovered evidence is sufficient to warrant setting aside the portions of the judgment concerning property restoration and denial of alimony and that a new trial should be awarded on these issues.

The proof to sustain the charge of cruel and inhuman treatment on the part of appellant showed that she drank alcoholic beverages to excess, with accompanying misconduct, which appellee claimed was embarrassing to him. Other proof showed that appellant was cool toward appellee's parents and that she was quarrelsome, contrary, ill-tempered, and abusive. The witnesses for appellee consisted of members of his family. In the original proceeding, appellant acknowledged by letter and by statement a lack of fault on the part of appellee. This occurred before she learned of appellee's conduct as shown by the newly discovered evidence.

The depositions of appellant, appellee, and the present Mrs. Charles Kivett, formerly Jean Cowden Dickinson, were taken in support of the motion under CR 60.02. The proof is that Jean Cowden Dickinson had operated a florist shop next door to the business which appellee had conducted in Harlan. He frequented her shop during the two years prior to the Kivett separation. Appellee maintained an apartment in Harlan and spent several nights each week there during the latter part of this period. The day after appellee filed his divorce action, Jean left her husband and went to stay with her parents in Raymondville, Texas. She remained there until May 6, 1956, except for a three-day trip back to Harlan in December 1955. The proof was taken in her divorce action on that occasion, and her divorce was granted

on February 2, 1956. She obtained a property settlement from her former husband.

The Kivett divorce judgment was rendered on April 5, 1956. Jean and appellee testified that they did not see, or have any communication with, each other from the time she left Harlan in October 1955 until after her return to Harlan sometime following May 6, 1956, when they "happened to meet" at a cafe there. Jean and Charles saw each other a few times but did not "date" or "court". She returned to Texas on June 6, 1956. Charles "thought" he wrote her one time after her return. About the middle of June, he called her from "somewhere in Georgia" and proposed. They met in New Orleans and were married in Gulfport, Mississippi, on June 25, 1956. Each denied any romantic interest in the other prior to the May 6 meeting.

After the marriage, Jean lived with her parents in Raymondville, Texas. She did this for "economic" and other reasons, including a desire not to "shock" her parents. She continued to be known by her maiden name. No announcement of the marriage was made. Charles moved to Texas, living first at Harlingen, then Raymondville, and upon obtaining employment moved to Brownsville. Harlingen and Brownsville are both near Raymondville.

Appellant went to Brownsville in February 1957, where she remained for some time. While there, she obtained some letters written by Jean to Charles. He identified one as having been received by him in February 1957, a reading of which indicates that it was written shortly before Saint Valentine's Day and in the spirit of the day. In part, it reads:

> "* * * My darling, did you see the moon tonight? This time last year I was looking at it and wishing. I'm still wishing, but 50 miles is better than 1550. But any distance that keeps me from you is too much. * * *"

Appellee and Jean denied that the letter referred to any relationship existing between them in 1956, prior to the granting of the Kivett divorce. Other letters indicate a desire to keep their marriage a secret in Kentucky. They admitted trying to regain possession of the letters but denied appellant's statement that Jean had threatened her or that Jean had told her "you little fool, you couldn't see what was going on under your nose all these years; Charlie and I have been in love for two or three years."

The divorce was granted under KRS 403.020(4) (d), which is:

> "Habitually behaving toward him, for not less than six months in such cruel and inhuman manner as to indicate a settled aversion to him or to destroy permanently his peace or happiness."

All of the proof is inconsistent with any finding that appellant had a settled aversion to appellee. The Chancellor must have found that appellant's conduct was such as "to destroy permanently his (appellee's) peace or happiness". The newly discovered evidence shows that there was a relationship in existence between appellee and Jean prior to his divorce decree. Their association in Harlan, his keeping an apartment and staying there at night, and the quoted letter all indicate that the subsequent marriage did not follow a casual relationship and it was not a spur of the moment matter based on a whirlwind courtship. Sober, mature people do not enter into the serious contract of marriage in such manner, and this is especially true after each has just become disengaged from such a contract. The evidence as to the conduct of appellee and Jean subsequent to the date of divorce corroborates the establishment and existence of more than a casual relationship between them prior to the divorce.

When a divorce has been granted, a review of the evidence is proper for the purpose of determining the correctness of the decree as to other matters adjudged,

including alimony and restoration of property. KRS 21.060. Millar v. Millar, Ky., 286 S.W.2d 882; McQueen v. McQueen, Ky., 294 S.W.2d 75. The rule is stated thus: "* * * alimony may be awarded where the husband obtained a divorce but the evidence did not justify the divorce, * * * or where the husband was the one whose conduct caused the final separation of the parties. * * *" See annotation and collected cases in 34 A.L.R.2d § 10, page 342.

■■ In such cases, the court should be governed by the element of "comparative rectitude"—that is, it should consider the relative degree of misconduct of the parties and their relative responsibility for the termination of the marital relations—when deciding whether to award alimony to the wife. 34 A.L.R.2d § 10, page 344; Flood v. Flood, 302 Ky. 167, 194 S.W.2d 166; Gnadinger v. Gnadinger, 309 Ky. 660, 218 S.W.2d 681. Giving such consideration to the present case, it is readily determined that except for appellee's conduct and relation with Jean Cowden Dickinson, there might never have been any separation of these parties. It, therefore, is concluded that the conduct of appellee, although at the time unknown to appellant, contributed to the marital separation; that the destruction of his peace or happiness was in part, if not wholly, due to the conduct of someone other than appellant; and that the motion under CR 60.02 should have been sustained and a new trial awarded on the question of alimony.

A restoration of property was adjudged to the appellant. She recovered $3,497.04, with interest from February 1, 1949, as the amount contributed by her toward the purchase of the interest in the Cumberland Ford Motor Company, Inc. Appellant recovered $1,500, with interest from date of judgment, as her part of the funds of a joint bank account. In addition, she was awarded a 1955 model Ford automobile, the household goods and furniture in their home. It was decreed that the title to the residence property occupied by the parties as a home and conveyed to them jointly should be conveyed to appellee as having been received by appellant in consideration of the marriage. She also was directed to deliver the possession of a life insurance policy to the appellee. No question is raised concerning the $750 attorney fee allowed to appellant's counsel who represented her in the lower court. She has other counsel on this appeal.

Appellant contends that she should have been awarded by way of restoration of property a proportionate part of the value of the property acquired during the marriage commensurate with the part of the purchase price contributed by her. She claims that the property had been acquired and accumulated by the joint effort, thrift, enterprise, and earnings of the parties and that by mutual consent the title to most of the property had been placed in the name of appellee. The property consisted of: (1) a one-half interest in the Pineville business; (2) a one-third interest in the Harlan Motor Company; (3) the residence; and (4) household goods, auto, and other miscellaneous personalty valued at approximately $4,500. The businesses in which the interests had been purchased had prospered. The evidence as to the value of the property is vague and contradictory, although a substantial value is indicated. In our view, it is unnecessary to consider the evidence as to value.

The governing statutes provide for the restoration of property "obtained from or through the other before or during the marriage and in consideration of the marriage", KRS 403.060(2), "or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage." KRS 403.065. The word "restore" means "to give back (something which has been lost, or taken away); to make restitution of; to return." Restoration means the "putting back to a former position or condition." Webster's New International Dictionary, Second Edition

■ It was the intent of the enactors of the statutes that the property of one party to a marriage obtained by the other party without valuable consideration or without any consideration other than by reason of the marriage should be given back to the original party upon the dissolution of the marriage. It was intended that each party should be returned as nearly as possible to the status or condition in which the party would have been except for the marriage. The restoration of a maiden or former name is typical. KRS 403.060 (4); Rayburn v. Rayburn, 300 Ky. 209, 187 S.W.2d 804.

■ In order to effectuate such an intention and insofar as the property may be determined or identified, the same property should be returned to the original owner. Duvall v. Duvall, 147 Ky. 426, 144 S.W. 78, $500; Eversole v. Eversole's Adm'x, 169 Ky. 234, 183 S.W. 494, insurance premiums; Burns v. Burns, 173 Ky. 105, 190 S.W. 683, articles of personal property; Ritchie v. Ritchie, 311 Ky. 569, 224 S.W.2d 648, specific real estate; Eckhoff v. Eckhoff, Ky., 247 S.W.2d 374, jointly owned real estate.

■ This is the general rule as exemplified in King v. King, 214 Ky. 171, 283 S. W. 73, where the husband paid $3,800 advanced by his wife on the purchase price of $6,500 for land. The judgment awarding the wife $3,800 plus accrued interest with a lien against the land was affirmed despite the argument of the husband that she was entitled to recover only 38/65 of the land's value. The contention as to proportionate restoration was the same as is made by the appellant here. See also Cotton v. Cotton, 306 Ky. 826, 209 S.W.2d 474, where the husband was ordered to reconvey title to an undivided one-third interest in a farm and the wife was ordered to restore to him $300 of $700 paid on the purchase price of the land. The remaining $400 had been paid by the wife.

A second basis for the general rule thus appears. So long as the property in which the wife's money is invested increases in value, the wife would benefit, but should the property decrease in value, the wife would be forced to bear the burden of her husband's speculation and he would be free to do so without hazard. The terms "wife" and "husband" in the statement of this rule are interchangeable, according to the particular case. Apparently, in the King case, the land value had decreased. We feel that the rule as stated is a protection for the spouse whose property may have been subject to speculation by the other spouse. The operation of the rule must not be made to depend on the rise or fall of property values. This would be foreign to the original concept of restoration of property. There is no merit in the distinction sought by appellant that the King case dealt with an advancement or loan.

Appellant has cited many cases as supporting her right to restoration of a proportionate part of the property owned by appellee. All of these cases have been studied and are distinguishable.

A subpeona duces tecum was served on appellee directing him to produce various records of the Cumberland Ford Motor Company, Inc., and Harlan Motor Company for the years 1954 and 1955. These included income tax returns, books, ledgers, inventories, financial statements, and other business records. The records were sought for the purpose of showing the value of appellee's interests in the two businesses. The ruling of the Chancellor in quashing the subpoena is not prejudicial under the facts of this case.

The judgment is affirmed as to the restoration of property and is reversed with direction to award a new trial on the question of alimony.