**Robert W. COOK, Appellant,**

v.

**Velma M. COOK, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1963.

Harris W. Coleman, Garland R. Hubbard, Louisville, for appellant.

Ruth C. Dougherty, Louisville, Robert C. Kime, Palm Beach, Fla., for appellee.

STEWART, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court wherein the parties, Robert Cook and Velma Cook, husband and wife, were granted an absolute divorce from each other. The chancellor also made a division of certain personal property between the parties and assessed a certain item of cost against Robert Cook. This appeal challenges the last-mentioned portion of the judgment.

The Cooks were married in 1929. Their only child, a son, was born in 1941. Neither party had any estate at the time of the marriage. They lived in Columbus and Dayton, Ohio, during the 1930's and acquired a duplex house in the former city. Mr. Cook worked as a salesman, generally on a commission basis. Mrs. Cook worked part-time as a saleslady in a department store. However, during one six-month

period, when Mr. Cook was ill, she was the family's sole support.

In 1939 they moved to St. Louis, Missouri, where they acquired some real estate. In 1941 Mr. Cook was called to army duty (he eventually rose to, and was discharged with, the rank of lieutenant colonel) and in 1944 was sent overseas. At that time, and in accordance with plans previously made by them, they bought a motel in Riviera Beach, Florida, for $35,000. The title to the motel was placed in their joint names with the right of survivorship in case the one should predecease the other. Mrs. Cook, who had been given a general power of attorney to consummate the transfer in behalf of Mr. Cook, testified she cashed "our bonds" to make the down payment on the motel of $12,456.13. The property in Ohio and in St. Louis, which had been held jointly by them, was sold and the money applied on the motel purchase price. Mrs. Cook managed the motel until her husband returned in April, 1946. They both continued to manage it thereafter.

By 1954, due to some substantial improvements and to inflation for the most part, the motel was worth $155,000 and was sold for that price to Max O. and Martha Hammer. The Hammers paid $20,000 cash and executed a purchase-money mortgage to the Cooks for the balance. The ownership of this mortgage, together with $17,-846.39 paid thereon and now in the hands of the receiver of the Jefferson Circuit Court, constitute two of the items in controversy here. Another item involved in this litigation is $16,610.26 invested in securities in the sole name of Mr. Cook and purchased by him with proceeds derived from the sale of the motel.

From 1954 until 1958 these people traveled around the country in a trailer. In March, 1958, while they were living in Kentucky, appellant beat up his wife, so she alleged, and she left him, returning to Florida which she considers her home. In August, 1958, she filed suit for divorce

in Florida and he filed suit for divorce in Kentucky.

The chancellor found "each of the parties equally at fault for having brought an end" to the marriage; and that Mrs. Cook, being guilty of moral delinquency (as was also Mr. Cook), was not entitled to alimony as such. He was of the further opinion "that the parties would not have had the nest egg to invest in the motel but for Mrs. Cook's fairly steady though more modest financial contributions," and decreed that "the parties' remaining assets (severely diminished since the sale of the motel in 1954) should be divided roughly 50/50." He also ruled that Mrs. Cook receive one-half of the securities Mr. Cook had purchased from a portion of the previously paid mortgage money and had placed in his name as the sole owner.

Mr. Cook first argues that the motel was purchased by funds earned and owned by him exclusively; thus the purchase-money mortgage, ordered payable to the husband and wife jointly, actually belongs to him alone and should be restored to him.

■ KRS 403.060(2) requires restoration, after a divorce, of property obtained from or through the other spouse before or during the marriage and in consideration of the marriage. See also KRS 403.065 which deals with the same subject matter. These statutory provisions have been invoked in many cases involving the termination of the marriage relationship. In Kivett v. Kivett, Ky., 312 S.W.2d 884, 888, this Court said:

> "It was the intent of the enactors of the statutes that the property of one party to a marriage obtained by the other party without valuable consideration or without any consideration other than by reason of the marriage should be given back to the original party upon the dissolution of the marriage. It was intended that each party should be returned as nearly as possible to the status or condition in which the party

would have been except for the marriage."

Thus, unless the wife here furnished a valuable consideration, the mortgage and the money and the securities mentioned must be restored in toto to the husband. Moreover, in the Kivett case, cited above, it was held the spouse claiming restoration must pay to the other spouse the money or other consideration actually paid. This amount, however, must be the actual amount contributed, without regard to any increase or decrease in the value of the property purchased.

There have been some cases where the courts have apportioned property to a spouse, even though a valuable consideration, as defined above, was not shown. In Powers v. Powers, 307 Ky. 475, 211 S.W. 2d 687, this Court said:

"The uncontradicted evidence shows appellee to have been at fault in bringing about the marital difficulties; therefore, the Chancellor correctly granted appellant a divorce. The parties were married in the year 1907, and lived together approximately thirty-eight years. The evidence shows that appellee bore twelve children, nine of whom are living at this time. The farm in question was inherited by appellant from his parents; but appellee worked in the field, yearly made a garden, kept house, cared for the children, and performed all the household duties in making a home for the family. The farm consists of approximately eighty acres of hillside land, and variously is estimated to be worth between $800 and $1500. Appellee inherited some money from her parents, which she had preserved in a bank account. Apparently the parties have had trouble since the inception of their marriage, but it is manifest from the evidence that, without the contribution of labor which appellee has made to this union, appellant would not have been able to preserve the farm in question or the livestock or implements which the Chancellor has divided as equally as possible. Under these circumstances, we are of the opinion that appellee has contributed to what little estate the parties now are in possession of to such an extent that she should be adjudged to be the owner of one-half thereof."

In Lockard v. Lockard, 305 Ky. 656, 205 S.W.2d 317, 319, a somewhat similar holding was reached. It is there stated:

"It appears the Chancellor in awarding the wife lump sum alimony in the sum of $7000 attempted to divide equally the real and personal property owned by the husband. He was certainly justified in finding that this property had a valuation of at least $14,000. Since both husband and wife had started their marriage with practically no estate, and together by their joint industry had accumulated this property, it is fair and equitable that the wife should be entitled to an equal share in it."

■ In the instant case, the chancellor found that it was "impossible to reconstruct the respective financial contributions of the parties"; that the Cooks had nothing when they married; that the wife worked throughout the marriage; that she therefore materially assisted in creating "a nest egg to invest in the motel"; and that the improvements the parties added to the motel were placed thereon solely by Mrs. Cooks's labors from 1944 to 1946 (her husband being then in the army), and jointly by the labors of both of them from 1946 to 1954. In short, it was the chancellor's view that Mrs. Cook's contributions toward the acquisition of the property, in litigation equaled that of Mr. Cook.

We cannot say the chancellor's findings of fact are clearly erroneous or, in truth, erroneous to any extent. See CR 52.01. Nor can we say his decision in respect to the division of the property between the

parties is not supported by substantial evidence.

■ Mr. Cook next claims the commissioner's fee of $1000 is unreasonable and unjust.

This action was instituted in 1958 and the commissioner filed his report in October, 1961. Eight hearings were held and 671 pages of depositions were taken. Two of the hearings consumed an entire day. The commissioner filed a lengthy and detailed report. We conclude there is an adequate basis in law and fact for the fee charged.

Wherefore, the judgment is affirmed.