**Harry L. SWAIM, Petitioner-Appellant,**
**v.**
**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**
**No. 19001.**

United States Court of Appeals
Sixth Circuit.
Oct. 17, 1969.

See also 6 Cir., 417 F.2d 358.

Edward M. Post, Louisville, Ky., for petitioner; Robert A. Kohn, Taustine, Post, Berman, Fineman & Kohn, Louisville, Ky., on brief.

John S. Stephan, Atty., Dept. of Justice, Washington, D. C., for respondent; Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., on brief.

Before WEICK, O'SULLIVAN and EDWARDS, Circuit Judges.

WEICK, Circuit Judge.

 The sole question presented in this case is whether petitioner, Harry L. Swaim, obtained gain under Section 453 (d) (1) of the Internal Revenue Code of 1954[1] in the taxable year 1962 when the Jefferson Circuit Court in Kentucky, in a decree of divorce, awarded to his wife, Mildred, as alimony, an installment note in the amount of $58,983.83.

The facts were stipulated and were summarized in the Tax Court's opinion as follows, 50 T.C. 302:

"Harry married Mildred F. Swaim (hereinafter referred to as Mildred) on March 21, 1925. They were subsequently divorced. They remarried on June 12, 1930.

"In 1945 Harry and Mildred bought a home and farmland near Jeffersontown, Kentucky (hereinafter referred to as the Jeffersontown property). They took title to the property in joint tenancy.

"On September 8, 1959, Harry and Mildred sold the Jeffersontown property to Berkley Homes, Inc., for a net price of $417,860.90. As payment therefor, Harry received a downpayment of $41,980.-46 and three promissory notes in the total amount of $176,950. The notes were equal in amounts and were due on September 8, 1960, September 8, 1961, and September 8, 1962. Mildred received a downpayment (including the option price) of $41,980.46 and three promissory notes in the total amount of $176,-950. The notes payable to her were equal in amounts and were payable at the same times as the notes received by Harry.

Both Harry and Mildred elected to report their profit on this sale on the installment method pursuant to section 453.

"Harry collected the proceeds of the 1960 note payable to him, and Mildred collected the proceeds of the 1960 note payable to her.

"On September 20, 1960, Mildred instituted divorce proceedings against Harry in the Fourth Division of the Chancery Branch of the Jefferson Circuit Court in Louisville, Kentucky (hereinafter referred to as Jefferson Circuit Court). This proceeding was adversary in character.

"On April 23, 1962, the Jefferson Circuit Court promulgated its 'Findings of Fact and Conclusions of Law' in Mildred's divorce suit. This document contains findings of fact to the effect that Harry provided all the money for the purchase of the Jeffersontown property. The document also contains the following pertinent passages:

" 'Under the [Kentucky] restoration statutes and the case of Hicks v. Hicks, 290 SW (2) 483 and Eckhoff v. Eckhoff, 247 SW (2) 374, [the] properties acquired by the plaintiff [Mildred] as a result of her marriage to the defendant [Harry] must be restored to him before an award of alimony can be made.

" 'Under the decision of the Court of Appeals and the Kivett case [312 SW (2) 884] it would appear that restoration should be made insofar as possible, of the identical property which was delivered or conveyed to the plaintiff. This would mean that the house on Glenwood Road, the fur-

1. Section 453—Installment method.
 (d) Gain or loss on disposition of installment obligations.—
 (1) General rule.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—
 (A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

 (B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.
Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. (26 U.S.C. 1964 ed., Sec. 453.)

niture located therein, the two [remaining installment notes from the sale of the Jeffersontown property] and the investments purchased by the plaintiff would have to be re-transferred to the defendant before an award of alimony could be made. However, since the defendant's estate is substantial and the award of alimony will be made on a lump sum basis, the Court will not require the plaintiff to actually transfer any of the aforementioned assets to the defendant unless the award of one-third of the estate of the defendant is less than the value of the property which should be restored to him.

\* \* \* \* \* \*

" 'Under the rule in the Heustis case, 346 SW (2) 778, plaintiff is entitled to at least one-third of [Harry's] property. In view of the length of the marriage of the parties, the Court believes that a total award of $180,000.00 would be appropriate. The question now arises as to what property the $180,000.00 should comprise. The Court finds that the plaintiff is entitled to title in the Glenwood Road property residence with a value of $40,000.00, the furniture with a value of $5,000.00, the investments acquired by her amounting to $42,458.96, and one of the two installment notes owing to her in the sum of $58,983.83. This leaves a balance of $33,557.21 after the plaintiff has assigned to the defendant the final installment note from Berkley Homes, Inc. owing to her in the sum of $58,983.83. The Court believes that it would be equitable to require the defendant to pay this balance of $33,557.21 in a first installment of $10,000.00 due forty (40) days after date of judgment, and the balance of $23,557.21 to be paid in eleven (11) annual installments, commencing ninety (90) days from date of judgment. \* \* \* '

"On June 14, 1962, the Jefferson Circuit Court promulgated its 'Judgment' in Mildred's divorce suit. The judgment granted Mildred a final divorce against Harry. It also listed in detail all the properties of which Harry was to be the rightful owner following the divorce. The judgment contained the following provisions relative to Mildred's property rights:

" '3. The plaintiff, Mildred F. Swaim, is hereby directed and ordered to assign to the defendant, Harry L. Swaim, all of her right, title and interest in and to the final installment of a $58,983.33 promissory note made payable to her from Berkley Homes, Inc., being the installment due on September 8, 1962.

" '4. The plaintiff, Mildred F. Swaim, is adjudged to be the sole owner of the following property:

\* \* \* \* \* \*

" '(c) Plaintiff is likewise entitled to retain and receive payment on the installment note from Berkley Homes, Inc., payable to her, insofar as the installment due and payable on September 8, 1961, is concerned, being in the principal amount of $58,983.34.

\* \* \* \* \* \*

" 'The above amounts are adjudged to the plaintiff as a portion of the lump sum alimony due her under the terms of this judgment.'

"On July 5, 1962, the Jefferson Circuit Court promulgated an 'Amended and Supplemental Judgment' in Mildred's divorce suit. Among other things, this document ordered Mildred to keep the 1962 installment note instead of the 1961 note and to transfer to Harry the 1961 note instead of the 1962 note. The occasion for this change was that sometime prior to June 1962 Mildred collected $5,000 as a partial payment on the 1961 note payable to her.

"In his Federal income tax return for 1962, Harry did not include any income under section 453(d) (1) because of the Jefferson Circuit Court's award to Mildred, in its judgment of final divorce, of the 1962 note payable to her.

"In his notice of deficiency for 1962, respondent, among other things, increased Harry's adjusted gross income by $26,383.46. He did so on the ground that Harry realized a gain under section 453(d) (1) by discharging part of his divorce settlement obligation with the 1962 note payable to Mildred."

The Tax Court held that since the Jefferson Circuit Court found that Harry owned the note prior to divorce and restored it to him, he received taxable income when he disposed of the note to Mildred as part of the alimony granted in the divorce decree.[2] The Tax Court followed the rule of United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed. 2d 335 (1962), stating:

"In Davis the Supreme Court held that a husband made a taxable disposition when he transferred appreciated stock to his former wife pursuant to a property settlement agreement incorporated into a divorce decree. Applying the Davis rule to the present case, we conclude that Harry 'distributed, transmitted, sold, or otherwise disposed of the 1962 note payable to Mildred when the Jefferson Circuit Court awarded the note to her.'"

We are required to determine whether the Tax Court was correct in finding that Harry owned the note prior to the divorce proceeding and in applying the rule of the *Davis* case.

Harry argues that he did not own the 1962 note prior to the divorce proceeding; that Mildred was the legal and equitable owner. Under Kentucky law she was qualified to own and dispose of personal property in her own name. K.R.S. § 404.020(1). The note was payable to her and she had possession of it. Harry contends that since he had no interest in the note, the divorce decree did not in substance or form restore the note to him; and that, therefore, he could not have

transferred it to her in any manner to give rise to a taxable event.

Harry further insists that the judgment of the Jefferson Circuit Court did not in fact restore the property to him since in lieu of a portion of a lump sum alimony payment to which Mildred was entitled, she was permitted to retain that which she already owned, namely, the $58,983.83 note payable in 1962.

Harry relies upon the Jefferson Circuit Court's Findings of Fact and Conclusions of Law, which provided:

"However, since the defendant's estate is substantial and the award of alimony will be made on a lump sum basis, the Court will not require the plaintiff to actually transfer any of the aforementioned assets to the defendant unless the award of one-third of the estate of the defendant is less than the value of the property which should be restored to him."

Harry contends further that actually there was no alimony awarded to Mildred since she suffered a net loss of $23,926.12 in assets as a result of the divorce decree.

The Commissioner contends that the Jefferson Circuit Court was correct in holding that the 1962 note belonged to Harry because rights of ownership in Kentucky for restoration purposes are determined by the source of the original financial contribution. Eckhoff v. Eckhoff, 247 S.W.2d 374 (Ky.1951). The Kentucky restoration statute provides:

"403.060 [2121; 2122; 2123] *Disposition of property; restoration of maiden name.* (1) If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as the court considers equitable; but no such allowance shall divest the husband of the fee simple title to real estate.

---

2. By order entered on September 13, 1962, the Jefferson Circuit Court held that Harry was entitled to a credit for any amount he was required to pay for federal taxes on the two installment notes, each in the amount of $58,983.33, payable in 1961 and 1962, the credit to be applied against the annual lump sum alimony payments.

"(2) Upon final judgment of divorce from the bonds of matrimony, each party *shall* be restored all the property, not disposed of at the beginning of the action, that he or she obtained from or through the other before or during the marriage and in consideration of the marriage." (Emphasis added)

The provisions of this statute are mandatory. Dague v. Dague, 411 S.W.2d 941 (Ky.1967).

Thus, where the wife's interest arises solely by reason of her marital status and not by reason of valuable consideration, the property is returned to the original owner. K.R.S. § 403.065 provides that any property obtained without valuable consideration, *shall* be deemed to have been obtained by reason of marriage.

In the present case the 1962 note represented proceeds from the sale of the Jeffersontown property which had been purchased with earnings of a bus line in which Harry was a partner. In 1930 Mildred had contributed $1,000 of the original $1,600-total investment in the bus line. The Jefferson Circuit Court evaluated Harry's interest in the bus line at the time of the divorce to be $96,000. In that Court Mildred contended that she was entitled to one-half interest in Harry's partnership interest and in the real estate owned by the bus line. The Court rejected this contention and held that she was entitled only to the amount of money which she had contributed toward the purchase price, and not a proportionate share of the value of the property at the time of the divorce, relying on Kivett v. Kivett, 312 S.W.2d 884 (Ky. 1958). The Court concluded:

"Under the Kivett rule the plaintiff [Mildred] would be entitled to the return of $1,000.00 were it not for the fact that the plaintiff was repaid this sum in 1947 by the defendant [Harry]."

When the Jeffersontown property was sold, Harry instructed the purchasers to send one-half of the proceeds to Mildred, which they did. Thus, Mildred received the notes as a gift from Harry. That was the extent of her interest in the notes.

In Kivett v. Kivett, *supra,* the Kentucky Court of Appeals said with reference to the restoration statutes:

"It was the intent of the enactors of the statutes that the property of one party to a marriage obtained by the other party without valuable consideration or without any consideration other than by reason of the marriage should be given back to the original party upon the dissolution of the marriage. It was intended that each party should be returned as nearly as possible to the status or condition in which the party would have been except for the marriage." (*Id.* at 888)

The *Kivett* case was cited and followed by the Court of Appeals of Kentucky in Cook v. Cook, 373 S.W.2d 432 (Ky. 1963), and followed in DeSimone v. DeSimone, 388 S.W.2d 591 (Ky.1965). There can be no question but that the Kentucky restoration statute affects the substantive property rights of the parties to a divorce proceeding.

Restoration of the note occurred under the Court's decree even though the note was not physically transferred to Harry and by him transferred back to Mildred. Circuity of action was avoided by allowing Mildred to retain the note. This practice was permissible under Kentucky law. Baker v. Baker, 344 S.W.2d 391 (Ky.1961); Pleasnik v. Pleasnik, 215 Ky. 281, 284 S.W. 1070 (1926); Hertel v. Hertel, 202 Ky. 422, 259 S.W. 1025 (1924).

Harry contends that even though he is entitled under the restoration statute to have his wife's note taken into account in determining alimony, this does not make him an equitable owner of the note, giving rise to a taxable event. Harry insists that the restoration statute merely requires the divorce court to consider the assets of the wife in determining alimony and does not affect substantive property rights. The trouble with this contention is that the Kentucky courts have construed the restoration

statute as mandatory in determining substantive property rights and not merely providing recommended guidelines for dividing marital property.

Harry further contends that *Davis* is readily distinguishable since in that case the wife had only an inchoate right of dower, whereas here the wife has absolute ownership of the note. The Supreme Court held in *Davis* that where the husband transferred appreciated stock to his wife to satisfy her inchoate right of dower pursuant to the divorce decree, he realized taxable income to the extent of the gain in the transfer. Harry attempts to distinguish *Davis* on the basis that in *Davis* the husband owned absolutely the property transferred, whereas in the case at bar the wife owned the property allegedly transferred. This distinction is without merit since the Jefferson Circuit Court has applied the restoration statute and determined that Harry was the owner of the note.

Harry concedes that if the Tax Court was correct in holding that he was the owner of the note, then the rule of the *Davis* case applies.

Harry finally contends that if there was a restoration, then there was a taxable disposition by Mildred when the property was restored to Harry. Harry's basis in the note would then be its fair market value. Upon transfer back to Mildred there would be no taxable gain. The Tax Court, however, rejected this contention, stating:

"It might seem at first blush that Mildred made a taxable disposition of the 1962 note payable to her when the Jefferson Circuit Court ruled that she had to restore to Harry pursuant to Kentucky law. This restoration was at most, however, a transfer of bare legal title in view of the Jefferson Circuit Court's determination that the note was actually Harry's property. It follows that Mildred's transfer was not a taxable disposition." (R. 16–17)

We are of the opinion that the Tax Court was correct in its holding.

Affirmed.